Mr. Krol v. Kennedy Mr. Blegin v. Kriegel Mr. Blegin Your Honor's counsel may please the court. We acknowledge that there is a heavy burden here when addressing a sufficiency question from a Illinois appellate court and here the question that was certified by Judge Shaw was the issue of intent and the heavy burden of course is you have to look and see whether the appellate court decision was objectively unreasonable and the appellate court looks views the evidence from the perspective of giving the benefit of the doubt to the prosecution and whether any rational trial or fact could have found the elements here beyond a reasonable doubt. But so I often wonder in these kind of cases whether there's some thought that well we already have a decision by a judge since it was a bench trial and so therefore how could we ever say that no rational trial or fact could have found the evidence sufficient here. So I want to talk just for a moment before I get on to the appellate court opinion about what the trial judge said about intent. The trial judge says in her ruling that Ms. Krol knew or should have known that her boyfriend intended to shoot the victim and that such conduct created a strong possibility of death or great bodily harm. So from the outset we have a judge applying the wrong standard. The standard for murder is not should have known there's no should have known standard for murder. That is akin to a standard for negligence or recklessness maybe involuntary manslaughter or something like that but there's no should have known standard and it's not a strong possibility of death or great bodily harm it has to be a strong probability of death or great bodily harm. So from that perspective if anybody looks at it that way that we don't really have a rational decision that got us to where we are in the first place we've got a decision applying the wrong standard. But so the question here is the main question is was the Illinois appellate court decision objectively unreasonable. I will start with the proposition that even the appellate court concluded that the conduct had issued here by a 19 year old woman in a chaotic situation where somebody was shooting at the car she was in which later turned out to be a BB gun that was shooting but she didn't know that throwing objects at the car yelling and screaming. Even the appellate court said that the conduct here happened her acquiescing to her boyfriend's request for the gun happened in the blink of an eye and it was a instinctual choice. So the intent at issue here had to be formed in the blink of an eye and I don't quite know what the appellate court means by instinctual choice those two words are kind of at odds with each other. Judge Shaw below said well somebody could conclude that an instinctual reaction is unintentional. So Mr. Blake can I ask you whether in your view we need to focus maybe exclusively on the time leading up to when she gives him the gun from the glove box which is a factual finding that I think we need to defer to or can or should we place any weight on her actions after the shooting where she goes back to the house and cleans up the car and does other things seemingly in aid of what had gone on? There is some case law in Illinois suggesting that after the fact conduct can be probative of intent but here keep in mind there is and so yes you do have to look at that and what Judge Shaw essentially said was that the appellate court gave too much weight to that in the of her boyfriend maybe did what he asked after the fact. She didn't get charged with accessory after the fact. The intent though to have intent for joint conduct you have to share the intent of the principle. It can't act either before or during the commission of the offense. So what happens after the fact might be able to tell you what her intent was prior or during the offense. It cannot substitute as the intent that had to be formed before or during. So I guess that's how I would answer that question. Mr. Blanken would you agree if there is sufficient evidence to show that she passed the gun to Martinez that that is sufficient evidence of intent? I wasn't clear from your briefing. It seemed that you were arguing there isn't sufficient evidence for the court to make that factual determination and therefore there isn't sufficient evidence of intent. But if there is sufficient evidence for that first aspect namely sufficient evidence to show that she did reach into the glove compartment and pass the gun to Martinez before he shot him. Is that sufficient to infer intent from or to say that the judge's determination was reasonable? It is not sufficient and I'll get to the reasons why in a moment. So Judge Shaw only certified, he did not certify the issue of the factual dispute of whether she actually passed the gun to him or not. He only certified the intent and he decided that there was enough evidence that the gun was in fact passed by Ms. Crow. So I think for purposes of this were beyond the factual issue but not beyond the intent issue and passing of the gun is definitely not enough. It wouldn't even, I don't think even the appellate court would say well just because she passed the gun therefore she's guilty, that reads intent out of the question. There still has to be the intent. And so here's the things that I think make most clear that the Illinois appellate court, their decision was objectively unreasonable and these are things that Judge Shaw below described as flaws in the analysis of the Illinois appellate court. Our view is they go beyond flaws and there's something that this court should find to be objectively unreasonable when reviewing an opinion. So first of all, the appellate court treated inculpatory evidence and exculpatory evidence differently in the sense that it required corroboration for exculpatory evidence but accepted uncorroborated inculpatory evidence even though all of the evidence came in through the state's case. There was no defense case put on here. And that goes beyond viewing the evidence in the light most favorable to the state. That is adding a specific requirement for exculpatory evidence which the law does not allow and which is one of the reasons why their opinion was objectively unreasonable. Are you saying the appellate court did that or the trial court did that? The appellate court did it. The appellate court said, for example, Ms. Kroll, there is evidence that Ms. Kroll when she was told, give me that gun, that her boyfriend said, I want to scare them. The appellate court rejected that evidence because it was uncorroborated and it's a statement that comes from her post arrest statement. But there was some evidence by one of the other passengers in the car, so some to the effect that Ms. Kroll might have been upset because her car got damaged by a brick or whatever was thrown at the car, but the appellate court did not apply that same requirement of corroboration for that evidence. That goes beyond viewing the evidence in the light most favorable to the state. That's grafting in a requirement out of thin air onto different types of evidence, particularly when there was no, it wasn't, it's not as if it came into the defense case. So that's one area where their decision was objectively unreasonable. Secondly, the appellate court literally ignored or just overlooked, I guess, exculpatory evidence. Ms. Kroll said, as was corroborated when all of this attack on the car started, get the H out of here, meaning go, a statement that is utterly contrary to an intent to kill, intent to do great bodily harm, any of those things. The appellate court did not address that evidence at all. Similarly, one of the other individuals in the car indicated that in one of his prior statements that the boyfriend had the gun in his lap for a moment after getting it from Ms. Kroll, apparently, but although he didn't see that, but had the gun in his lap and only turned to shoot it after the object, the brick or whatever it was, hit the car, slammed on the brick, said, what the F, and then fired the gun. So as Judge Shaw pointed out, that's evidence of an intent to kill by the boyfriend or an intent to shoot or cause great bodily harm that formed after the gun was already in his hand and couldn't be an intent shared by Ms. Kroll. That's, again, that's not weighing the evidence in the light most favorable to state. That's just simply ignoring exculpatory evidence, which you should find is objectively unreasonable. I mean, you know, the appellate court's decision on the issue of intent is like a paragraph or two. It's not, it doesn't go into great depth, but it ignores that. Thirdly, and this one I think is a key aspect of objective, of it being objectively unreasonable, the appellate court engaged in speculation. Judge, you don't have to agree with what Judge Shaw said below, but he concluded that the appellate court did speculate on this issue of Ms. Kroll knowing that the gun being fired at the car was a BB gun. That is utter speculation. The evidence regarding that was that after the fact, some of the other male passengers in the car had some discussion of maybe it wasn't a real gun or a BB gun because they didn't hear anything hit the car. Ms. Kroll, for her part, said, I don't know the difference between what a BB gun or a real gun sounds like. I heard pop, pop, pop. Yes, the gun fired from inside or very near the car by her boyfriend was louder, but of that, I wouldn't know the difference between a 22 and a 38 or something being shot. It was utter speculation for the appellate court to decide that her intent could be shown or inferred from the fact that the people attacking the car only had a BB gun. That's utter speculation. We don't allow jurors to do that. Okay, Mr. Plank, and I think we're going to have to wrap things up here since you're a bit over. Okay, thank you, Judge. All right, thank you. Mr. Kriegel. Thank you. Good morning. I'm Assistant Attorney General Jason Kriegel for Respondent. And as Petitioner's counsel rightly pointed out, this review of Petitioner's sufficiency claim involves a double layer of deference. And here Petitioner just can't overcome that hurdle. As to answer Judge Sainte's question about the fact that Petitioner handed the gun to Sergio, obviously, counsel now concedes that that fact is established. Petitioner testified or told the police that she handed him the gun. And I think that is really the key fact in this case, that Petitioner handed a loaded gun to her boyfriend as they were, you know, they were in the car. Could I just interrupt and ask, was there ever any dispute that Ms. Kroll knew that the gun was loaded? Well, she told the police that she didn't know that the gun was there. She had no knowledge of the gun. It was her car, right? Her mother's car, somebody's car? It was her mother's car, that's right. So, I mean, obviously, they had this whole story that they just happened to be driving down 26th Street going to the shopping mall when they saw maybe it was Isaac, maybe it was Christopher and decided, oh, now we'll just we'll stop by Christopher's house and ask for our money. But I think the trial court could rightly have discounted that testimony because it was at home at the time that Christopher received the call and Christopher was getting ready for this concert. So I think there are a lot of self-serving statements in Petitioner's statement to police, in Joshua and Jose's trial testimony. And I don't think there's anything unreasonable, as counsel argued, in either the trial court or the appellate court placing greater weight on statements that are inculpatory. I mean, the law of evidence recognizes that inculpatory statements are more, can be more credible than exculpatory statements, than self-serving exculpatory statements. So I don't think there's anything unusual about placing greater weight on those inculpatory statements. And the testimony about being in a chaotic situation or whether they thought they were being shot at by a real gun, those were all issues that were placed before the trial judge had an opportunity to weigh the conflicting evidence and determine that those facts didn't matter, that Petitioner— The intent standard includes knowledge that the acts create a strong probability of death or great bodily harm, right? And so is it the state's position that the simple act of complying with the request, give me this gun from the glove box, is enough to permit the inference that she knows that she is creating a strong—I guess in Sergio Martinez's hand, she's creating a strong probability of death or great bodily harm? Well, sure. I mean, it's our position that there are other facts, too, but I do think there's certainly nothing irrational about inferring that in that circumstance, what else could to turn around and shoot Christopher or shoot at the brothers generally? Well, he could have shot up in the air to scare them, I suppose. He could, but we know also a petitioner told the police that she and Sergio had this long-running feud with the Rivera brothers, that she'd been harassed for a year with text messages and social media messages, and she'd even told the police that she moved out of Berwyn to Chicago in order to escape from the Rivera brothers. So there was the feud that we know about. And then as Judge Wood, as you pointed out, there's also this conduct after the fact that suggests she drove the car away, she cleared the car off to hide the fact that they had been out. She found an alibi by going out shopping with a friend, and then she initially denied any knowledge of the shooting to the police. So all of that at least suggests a guilty conscience. And Petitioner's Counsel also referred to the trial court's verdict in which she mentioned that, said something along the lines of petitioner knew or should have known, and counsel argued that that was the incorrect standard under Illinois law. And I would just point out that's not right. Under Illinois law, common defense rule, the, excuse me, the common design rule, when two or more persons engage in a common criminal design or agreement than any acts in furtherance, they're committed by one party, are considered to be the acts of all party to the common design. So Petitioner could have, and Sergio could have had an intent to commit any crime. I mean, if Sergio takes a further criminal act, Petitioner is accountable for that act. So it wasn't necessary for the trial court- Doesn't she therefore realize that the act would be within the scope of this common design? I mean- I think that's right. You could have a design to go rob people or something, but maybe not a good design to kill them. Right. But I think if you, well, if you, if you look at Illinois law and I can provide a citation, I mean, Petitioner has never made this argument, certainly in this court, I don't believe ever in any court that the trial court applied the wrong standard. It's certainly not a federal claim even if the trial court applied the wrong standard. But for example, People v. Terry is an Illinois Supreme Court case 99, excuse me, 460 Northeast 2nd, 746, which explains that committing a burglary in Illinois, if you, if you agree to that crime, and then the principal commits a murder in the course of a burglary or a is accountable for that further crime. So the trial court didn't make, didn't state the wrong standard. The appellate court then didn't even have to get into the common design rule because it held that it was a reasonable inference that Petitioner knew that Sergio was going to turn around and shoot this weapon at the Rivera brothers. And whether they discussed that in advance, which could be suggested by the fact that they were at the Rivera's house in the first place and they were taunting the Rivera's, the testimony was that the statements that Jose and Joshua made was that they were, had their hands out of the window, sort of beckoning them along. And remember the Rivera's are on foot and the Martinez group is in the car. So if they're afraid, if they're truly afraid for their lives from their Rivera brothers, all they have to do is hit the gas pedal and take off. There's no need to wave a gun or shoot in the air. So I think it was certainly a reasonable inference at the very least that even if you accept that Petitioner didn't know about the gun in advance and, or didn't know that they were going to Christopher's house that day, when they're in that situation and Sergio says, give me the gun, it's a reasonable inference that he's intending to use that gun. And there's certainly nothing in clearly established Supreme Court precedent that says that that is an unreasonable inference. And so I think that really ends the inquiry there. Well, if you'd like to end your argument there too. If there are no further questions, we'd ask that this court affirm. All right. Thank you very much. Mr. Blagan, you ran out of time, but I'll give you a minute to reply if you would like to take it. You're on mute if you, oh, there you are. I just realized that. Thank you. So on the issue of whether Ms. Kroll knew that the gun was there, the evidence is there's no evidence that she knew the gun was there or that she knew it was loaded. I know the state says, well, you can't rely on what she says in her post for a statement unless it's bad, but there was no evidence whatsoever that she knew that the gun was there. In fact, the evidence was that her boyfriend had had the car on his own earlier that day. So the only reasonable inference would be that she did not know it was there. Otherwise he would, you know, he also wouldn't have had to say, you know, give me that thing, whatever. She would have known that. This suggestion that somehow Ms. Kroll was involved in some dispute between these people or that she, I mean, the state said that, you know, that they, the people in the car were taunting the Riveras. There's no evidence whatsoever that Ms. Kroll was doing anything about taunting anyone else. It's clear that she wanted to get out of there. It's clear that she thought people were shooting at the car. You know, the state says, well, the judge could have believed the people on the street versus the people in the car. The people on the street clearly lied. They said that there was no BB gun there. Yet a BB gun was recovered. Everybody said that at least a BB gun was shot at the car. You know, what we have here was, and I don't have any interest at all in whether the boyfriend has a self-defense claim or not, but clearly what was going on here was that the boyfriend was trying to do a self-defense claim and the state and the people on the street were trying to avoid that defense. Ms. Kroll had nothing to do with that. Okay. I think we'll need to stop there. So thank you to both counsel. The court will take the case under advisement.